188 So. 150

## STATE v. MISTRETTA.

### No. 35210.

April 3, 1939.

James A. Lindsay, of New Orleans, for appellant.

David M. Ellison, Atty. Gen., and Charles A. Byrne, Dist. Atty., and Rudolph F. Becker, Jr., Asst. Dist. Atty., both of New Orleans, for appellee.

ODOM, Justice.

In a bill of information filed by the district attorney, Joseph Ciro and Dominick Mistretta were jointly charged with the crime of robbery. They were tried together, both convicted, and sentenced to hard labor. Dominick Mistretta appealed.

There are only two bills of exception found in the record. Bill No. 1 was reserved to the ruling of the court permitting the State to introduce the confession of Mistretta. The objection to the introduction of the confession was that it was not freely and voluntarily made. Bill of Exception No. 2 was reserved to the refusal of the trial judge to grant a new trial. The basis of this bill is the same as that of the first bill. Therefore, if the ruling of the trial judge permitting the introduction of the confession was correct, a discussion of the second bill is unnecessary.

It is stated by counsel for defendant, and conceded by counsel for the State, that the only testimony introduced by the State at the trial of the case against the defendant Mistretta was his confession. When the State offered to introduce this confession in evidence, counsel for defendant objected on the ground that the confession had been extorted while the defendant was under arrest; that he was subjected to "treatment designed by effect on body or mind to compel confession of crime".

No authority need be cited to support the proposition that a confession not freely and voluntarily made by an accused person cannot be introduced against him, except the Constitution itself. See Section 11, Article 1, Constitution of 1921.

When the State offered to introduce defendant's confession and counsel for defendant objected to the introduction on the ground stated, the three members of the police department who made the arrest, and who had custody of the defendant from the time he was arrested up to the time the alleged confession was made, were called as witnesses. Their testimony was taken in open court and is in the record. The three officers called were George Reyer, Superintendent of Police; John J. Grosch, Chief of Detectives, and Captain Henry Asset, of the police department.

Their testimony, in sum, is that somewhere around 2:30 o'clock on the morning of April 25, 1938, they went to the residence of Joseph Ciro and there arrested him; that they searched his room and found certain articles of clothing, a revolver, a hat of a certain color, and a leather bag referred to as a brief case, which fastened with a zipper. They took Ciro and the brief case to the residence of Joseph G. Chetta, one of the victims of the robbery, who identified Ciro and the brief case. They then took Ciro to the place of business of Nace Pedone, the other victim of the robbery, who also identified Ciro and the brief case, Ciro being identified as one of the persons who participated in the hold-up.

These three officers then took Ciro to the Fourth Precinct Station and locked him up. Ciro, it seems, had implicated the defendant Mistretta. The officers then went to the home of Mistretta and arrested him. He was informed by the officers that he was accused of being implicated in the robbery of Chetta and Pedone. He protested his

innocence and positively denied that he knew anything about the affair. He was then carried to the Fourth Precinct Station in an automobile. Upon reaching the Fourth Precinct Station where Ciro was incarcerated, the officers had Mistretta stand on the sidewalk and look up at the window of the cell in which Ciro was confined, Ciro having been brought to the window where he could see Mistretta. Mistretta was asked whether he recognized Ciro, and he said that he did, and Ciro stated that he recognized Mistretta. Mistretta stated to the officers, however, that he had not seen Ciro in quite a while.

The three officers then took Mistretta to the office of the Chief of Detectives, which is in the Criminal Courts Building, where he was detained but not locked up. This was about 7 o'clock, a. m. Some person connected with the police force then went to the Fourth Precinct Station, got Ciro, and brought him to the office of the detective. Officer Asset left the building about that time. Officers Reyer and Grosch testified that, when Ciro was brought from the Fourth Precinct Station to the detective's office, Ciro and Mistretta had a conversation, during which Ciro told Mistretta that he had told the officers the whole story and suggested to Mistretta that he had as well do the same. The two officers testified that Mistretta then made a free and complete confession of his guilt.

This confession was not reduced to writing at that time, according to these officers, but on the following day Mistretta was taken before a stenographer named

Robert J. Ames, who, in the presence of Grosch, Captain Alfred Malone, and Detective V. J. Slicho, reduced Mistretta's confession to writing, and Mistretta signed it. The written confession, which is in evidence, goes into detail as to the agreement entered into between Ciro and Mistretta concerning the proposed hold-up, tells why they were willing to engage in such an enterprise, and just how the robbery was consummated.

The officers, Reyer, Grosch and Asset, testified positively on direct and cross-examination that no promises were made, nor inducements held out, to Mistretta to persuade him to make the confession; that no violence whatsoever of any character or description was used or threatened; that Mistretta protested his innocence from the time he was arrested until he met Ciro in the office of the detectives, and that then and there, after Ciro had told him that he (Ciro) had told the whole story to the officers, he made the statement which was finally reduced to writing and signed.

The only testimony against that of the officers is the testimony of Mistretta himself. He testified that the officers threatened him, told him what would happen if he did not confess, reminded him of what had happened to a man named Palumbo, and that they would put him in the cell where they had Palumbo and, if he did not confess, they would stamp him to death. He testified that, while in the detective's office, Superintendent Reyer, Chief of Detectives Grosch, and Captain Asset jumped on him and "Every time I turned

around, why somebody would slug me." He admitted that he signed the statement written out the next day by the stenographer in the presence of Grosch, Slicho, and Malone, but stated that he did so because he would rather face the court than to be subjected to the treatment which he expected from the officers in case he refused to sign. He did not say he was then threatened or mistreated. He offered no testimony to corroborate his statement that he did not confess voluntarily. .

On the testimony adduced, the trial judge was of the opinion that the confession was freely and voluntarily made, and admitted it. We cannot say that he erred. The testimony of the officers that Mistretta confessed, after he had been taken into the presence of Ciro and after Ciro had told him that he (Ciro) had told the entire story, seems reasonable. While on the stand as a witness in his own behalf, Mistretta was not asked about the conversation with Ciro, and Ciro was not called as a witness; so that the testimony of the officers as to the meeting of the two and the conversation is not contradicted. The stenographer who took and reduced the confession to writing was not called as a witness, nor were Malone and Slicho called.

After reading all the testimony brought up in the record and after considering all the circumstances surrounding the case, our conclusion is that the judge did not err in admitting the confession.

The conviction and sentence are affirmed.

HIGGINS, J., absent.