HAMITER, Justice.
 

 On March 18, 1946, the defendant was indicted by the Grand Jury of St. James Parish for the murder of Irving A. Pincus, which occurred on December 26, 1945. Thereafter his counsel, designated by the court to represent him, obtained through appropriate proceedings the appointment of a lunacy commission to conduct an examination with reference to his mental condition.
 

 
 *390
 
 At a hearing on his plea of present insanity held September 20, 1946, at which the lunacy commission’s report (together with other evidence) was received, the court adjudged defendant presently sane and able to assist in his own defense and to understand the proceedings against him. Thereupon, he was arraigned and pleaded not guilty.
 

 The trial, which commenced on September 30, 1946, was concluded on October 5, 1946, the jury returning a verdict of guilty as charged. Three days later, after the overruling of a motion for a new trial, the court sentenced defendant to death by electrocution. This appeal followed.
 

 Defense counsel complain here of the district court’s permitting the introduction in evidence of two written confessions of the accused, one made at Mobile, Alabama, on December 29, 1945, and the other at Convent, Louisiana, on December 30, 1945, they alleging the commission of several errors. Countering, the state, besides answering the contentions of defense counsel, urges that the complaints can not be considered by us for the reasons, (1) that no formal bills of exceptions, relative to the court’s rulings on the confessions’ admissibility, were ever prepared and tendered to the district judge for his signature, and (2) that the written confessions, although physically in the transcript of appeal, are not legally a part of the record.
 

 Pretermitting the question raised by the state of whether or not the confessions are properly before us for consideration, the transcript filed here discloses no error of law committed by the trial court in permitting their introduction.
 

 With reference to their first complaint, defense counsel correctly point out that the state must prove that a confession was voluntarily given before it may be admitted in evidence. Then they charge that the confession made at Mobile, Alabama, was obtained from the accused by the Alabama . Highway Police through their lengthy cross examination of him and by their making statements designed to lead him into believing that he might benefit on giving it. But there is nothing in the transcript that supports this charge; the confession itself, on the contrary, states that it was made “free and voluntary without any promise or inducement and without any coercion, threats or bodily harm * * Neither does it appear from the recorded proceedings that the state failed to lay the necessary predicate for the confession’s introduction.
 

 Next, it is contended that the confession obtained the following day at Convent, Louisiana, was inadmissible, even though it was held to have been voluntarily made, because inducement or fear once established continues at any subsequent confession. This contention can not prevail; it is grounded on the premise that fear and inducement occurred in the obtaining of the previous Mobile, Alabama, confession, and
 
 *392
 
 that occurrence, as pointed out above, is not shown by the transcript.
 

 In connection with their final complaint, which concerns the introduction of both confessions, defense counsel state that “a confession must be admitted in its entirety, and if -a portion of it is inadmissible, then the confession should be excluded.” In support of this proposition they invoke the principle that the state, since the repeal in 1932 of Article 218 of the Code of Criminal Procedure, is not permitted to prosecute an accused for two separate and distinct crimesj under the same indictment; and they also invoke the provisions of Article 450 of the Code of Criminal Procedure, reading:
 

 “Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole may afford.”
 

 Then they argue, to quote from their brief, that:
 

 “While it may'seem that this Article is intended solely to safeguard against the state using only that portion of a confession which tends to incriminate an accused and excluding the qualifying statements, we urge it in another manner.
 

 “The confessions of the defendant, Alonzo Ellis Jones, admitted in evidence at his trial contained references to the killing and attempted killing of two other individuals besides the homicide for which he stood trial.
 

 ******
 

 “The state in the case now on appeal before this Honorable Court elected to prosecute Alonzo Ellis Jones under an indictment for the murder of Irving A. Piticus and, once this election was made, it is not permitted or should not be permitted to introduce any evidence, particularly confessions, that refers to two other crimes committed by the defendant.
 

 “It is not permitted under the provisions of Article 450, Code of Criminal Procedure, to exclude that portion of the confessions which dealt with the other crimes and to admit it with respect to the murder of Pincus. Since there were separate crimes, w^e submit that it was prejudicial error to allow the confessions to go to the jury as evidence.”
 

 Reference to defendant’s shooting of the two men other than Pincus, with all of whom he was “hitch-hiking” at the time, is made in the following quoted extracts from his two confessions.
 

 In the Convent, Louisiana, statement he said in part:
 

 “We made three or four stops for coffee and cakes, none of us drinking any intoxicating liquor. It was dark when we passed through Alexandria, La. Quite a while after leaving Alexandria, La., I have no idea of the time, I suggested to the driver that he stop the automobile so that I could
 
 *394
 
 take a leak. He,' Pinky, stopped the automobile off of the pavement on the grassy section of the highway. The four of us, Pinky, Smitty, Ray and myself, got out of the car to take a leak. We all stood along the right side of the automobile away from the paved highway while we urinated. At this time I had the P 38 automatic pistol which I had taken in Eagle Mills, Ark. in the pocket of my coat. I believe that the gun was in the left coat pocket. I had not mentioned having the gun to any of the occupants of the automobile. I had to urinate pretty badly and took longer than the other three men. When I had finished the other three men had already seated themselves in the Packard automobile. To the best of my recollection Pinky was behind the wheel of the car, Smitty was seated in the front seat alongside of the driver, and Ray was seated in the rear seat of the car. I was facing the right side of the automobile as I was urinating, and when I finished I started to get into the rear of the Packard automobile. Suddenly for no reason that I know of I pulled the P 38 automatic pistol from my coat pocket and shot the sailor, Ray, who was seated in the back seat. I then turned slightly and shot both of the men, Pinky and Smitty, who were seated in the front seat of the automobile. Pinky, as I shot him, got out of the left door of the sedan, and Smitty, as I shot him, fell out of the right front door of the car which was open at the time. I ran around the rear of the parked automobile and saw Pinky in a crouched or bent over position against the left front fender of the Packard automobile. I fired the P. 38 pistol again at Pinky. I then returned around the back of the parked car to the right side of the vehicle, where I fond the body of Smitty lying halfway on the ground and halfway on the right running board of the car. I picked up Smitty’s body and pushed it in the rear seat of the Packard automobile alongside of Ray who was still lying in the rear seat. I had to push one of Smitty’s feet into the car before I could close the right rear door. I closed the right front door of the sedan, and again walked around the rear of the car to the left side where I entered through the left front door and seated myself behind the steeringwheel of the automobile. As I entered the car from the left side I do not remember seeing the body of Pinky whom I had shot at as he crouched against the left front fender. (A.E.J.) Page 3.
 

 “I don’t remember what I did with the P 38 automatic pistol and don’t remember having it in my hand when I started the motor of the car. I drove the Packard automobile along the highway until I came to a filling station and a side road leading off of the paved highway to my right. I turned the Packard sedan off of the paved highway and drove along this side road leading to my right until I came to the first intersection where I turned to the left. Just a short distance from this intersection I pulled off of the road into a vacant space along
 
 *396
 
 side of a building on the left side of the road. * * * ”
 

 In the Mobile, Alabama, confession he stated in part:
 

 if “After I finished urinating there was no words 'between us and I commenced firing at the men. I do not know how many shots I fired or how many of the men I hit. It seems like one of the men hollowed, after the shooting I got in the car and drove away. I remember going through the sail- or’s pockets but do not remember how much money I took. I drove away from the scene and stopped and changed clothes. I don’t remember what I did with the gun but I know definitely that I did not have the gun when I arrived in New Orleans. It seems like I turned off the main highway on a side road to change clothes.”
 

 The general rule of law with reference to the introduction in evidence of a confession that admits offenses other than the one for which the accused is on trial is stated in Vol. 22, C.J.S. verbo Criminal Law, § 820, as follows:
 

 “The fact that the language of a confession indicates that accused has also committed another and separate offense will not vitiate the competency of the confession. Indeed, in some jurisdictions the entire confession is admissible notwithstanding this fact. In other jurisdictions, however, if the part bearing on the issue can be separated from the parts relating to other offenses, only that part material to the issue is admissible, but if such separation is impossible the whole confession is admissible. Moreover, the entire confession is admissible where the part relating to other offenses tends directly to prove accused’s guilt of the crime charged or the motive for its commission, or where such part serves to explain the remaining portion of the confession.”
 

 And in American Jurisprudence, verbo Evidence, Vol. 20, Section 489, we find:
 

 “In proving a confession, the prosecution may introduce parts of the conversation which show, or indicate, that the accused has committed other and separate offenses, where such admissions are inseparably connected with the confession of the crime charged. In such cases the whole confession is admissible in evidence and may go to the jury under directions that they shall disregard the parts of the confession which do not relate to the crime in issue. But when the parts of a conversation connected with a confession of the crime charged can be separated from those relating to other offenses, only those parts which are material to the crime charged should be received in evidence.”
 

 While the state has cited no decisions of this court dealing specifically with the instant question, and none has been found by us, we know of no good reason why there should not be applied here (and we hold it to be applicable) that principle of law, well, recognized in our jurisprudence, which permits the introduction of evidence (other
 
 *398
 
 than a confession) in proof of a crime different from the one charged when both offenses are closely linked and constitute a part of the res gestae or when it is pertinent and necessary to show motive or intent. That principle is basically similar to the above quoted general rule of law pertaining to confessions. Moreover, a confession when voluntarily given is analogous to an admission made by a defendant when questioned while he is on the witness stand testifying in his own behalf as to his guilt or innocence.
 

 Louisiana authorities sanctioning the admissibility of evidence relating to events that form a part of the res gestae are Articles 447 and 448 of the Code of Criminal Procedure and State v. Guillory, 201 La. 52, 9 So.2d 450 (and cases therein cited). Those authorizing the proving of independent acts to show intent or motive are Articles 445 and 446 of the Code of Criminal Procedure, State v. High, 116 La. 79, 40 So. 538, and State v. Childers, 196 La. 554, 199 So. 640.
 

 -Defendant’s acts of shooting Ray and Smitty, described in his confessions and which counsel assert rendered the statements inadmissible, occurred contemporaneously with the crime charged here; hence, they were a part of the res gestae and, in keeping with our above observations, the confessions in their entirety were admissible in evidence.
 

 For the reasons assigned the conviction and sentence are affirmed.