PIAMITER, Justice.
 

 In cause No. 149-978 on the docket of the Criminal District Court for the Parish of Orleans the defendant herein, Thomas Goins, and one Bejamin Mackey, both colored and approximately 18 years of age, were charged jointly in an indictment with the murder of Anthony Meyers on April 1, 1955. That indictment, however, was nolle prosequied when a new Grand Jury, containing Negro members, reindicted them on the same charge.
 

 On the day of the trial on the second indictment, in cause No. 151-611, the state severed as to Benjamin Mackey and proceeded to prosecute Goins alone. The prosecution resulted in a verdict of guilty as charged.
 

 
 *249
 
 Subsequently Mackey, who had been used as a state witness in the trial of Goins, was permitted to plead guilty without capital punishment. He was sentenced to hard labor for life in the state penitentiary.
 

 Goins received a sentence of death by electrocution. From it and his conviction he is appealing.
 

 To properly discuss some of the 52 perfected bills of exceptions, the majority of which obviously cannot possibly be seriously relied on for a reversal although defense counsel announced that he was not abandoning any of them, it is well that we briefly recite the principal facts relating to the crime charged to appellant.
 

 At approximately 7:30 o’clock P.M. on April 1, 1955, appellant and Benjamin Mackey forced Thomas Hulings (known as Dusty), a 16 year old Negro, to steal an automobile for them. While driving this car at about 9:00 o’clock the same night they came upon one Francisco (or Frank) Imperatore, an Italian citizen, whom they attempted to rob with force of arms. When Imperatore began running he was shot by the defendant with a .38-caliber revolver. And as he staggered Goins and Mackey drove away.
 

 About ten or fifteen minutes later they approached the victim in this case, Anthony Meyers, who was walking. Goins alighted from the car and went to him for the purpose of committing an armed robbery. Meyers quickened his pace and attempted to flee; but, as he moved away, the defendant shot him twice in the back. While the victim lay on the sidewalk Goins took a wallet and some change from his pocket.
 

 Shortly after the defendant and Mackey had left the scene Dusty Hulings, who meanwhile had stolen another automobile, was observed. They chased him about twenty blocks (he thinking that they were police officers) until he abandoned the car he was driving. The defendant and Mackey, thereupon, appropriated it; and while driving around in this second vehicle they were apprehended by a motorcycle policeman (Henry Cerise). Mackey, obviously to prevent arrest, fired two ineffective shots at the officer from the above mentioned revolver.
 

 Some minutes later defendant and Mackey abandoned the second automobile (when its engine failed) and stole a third. In it they drove to Sander’s barroom where the defendant told one Lawrence Warden that he had just shot a man whom he then thought to be dead.
 

 Bill No. 1. At the commencement of the trial'the Clerk of Court inadvertently read to the jury the indictment in cause No. 149-978 (which, as before shown, had been nolle prosequied) instead of the subsequent indictment in cause No. 151-611 on which the defendant was to be tried. Because of the inadvertency defense counsel
 
 *251
 
 moved for a mistrial. The motion was overruled and this bill was reserved. The Clerk then read the second '(the proper) indictment to the jury.
 

 The defendant was in no manner prejudiced inasmuch as the judge explained to the jury that the first indictment had been read in error, that it was “the same charge tó be tried by you for which you have been empaneled”, and that the second charge was simply a'repetition of the first one.
 

 Bill No. 2. In his opening statement the district attorney said that he intended to show the movements of the defendant on the night of the crime, particularly referring to the stealing of the first car, to the attempted robbery of Imperatore, to the flight from the motorcycle officer after the commission of the crime charged, etc. (as set out above). At this point defense counsel objected to the references to what he termed “a series of crimes” and “to the introduction of any evidence as to any other crimes than the crime for which the accused is on trial here today.”
 

 Proof of such movements was proper (and hence they were properly referred to in the opening statement) to show preparation for the commission of the crime charged, intent, motive and a consciousness of guilt, even though the acts involved constituted independent offenses. State v. High, 116 La. 79, 40 So. 538; State v. Morgan, 211 La. 572, 30 So.2d 434; State v. Haddad, 221 La. 337, 59 So.2d 411; and State v. Palmer, 227 La. 691, 80 So.2d 374.
 

 Additionally, in this bill (No. 2) defense counsel attempts to incorporate a remark allegedly uttered by the district attorney that “ * * * we have the right to show that there is a system in these murders”. There is considerable doubt that the remark was made. But be that as it may the trial judge correctly points out in his per curiam that (if made) it occurred during a colloquy between the district attorney and defense counsel, and that no objection was then urged thereto so that a ruling might be given or the alleged error corrected.
 

 Bills Nos. 3 and 4. For his own benefit the district attorney had reduced the opening statement to writing, and he had filed a copy thereof with the court reporter to be used for verification purposes as the statement was read to the jury and for facilitating the court in regulating the introduction of evidence. Defense counsel requested that he be given a copy of the statement for his private files or that he be permitted to have the one furnished the court reporter for overnight study. Each request was denied and these bills were reserved. The court announced, however, that counsel could have free access to the copy made part of the record (that
 
 *253
 
 furnished to the reporter) provided that he did not remove it from the court room.
 

 The bills are without merit. There is no law even requiring the district attorney to reduce his opening statement to writing, much less to furnish a copy thereof to defense counsel. Nor do we know of any requirement that the judge permit the removal of a copy thereof from the court records if and when one has been filed. Furthermore, since defense counsel was granted unlimited access in the court room to the filed copy we perceive of no prejudice resulting from the judge’s rulings.
 

 Bill No. 5. This bill was taken when the brother of the victim (Anthony Meyers) was shown photographs (S-l and S-2) of the latter, was asked if he recognized the person there pictured, and was permitted to answer the question. The basis of the objection was that “the proper predicate has not been laid as to proof of authenticity by the photographer who took the photographs”.
 

 The question asked. was solely for the purpose of identifying the victim named in the indictment. Subsequently, the photographs, before being introduced into evidence, Were identified by the person who took them in the morgue. The same procedure was held not to be reversible error in State v. Foss, 158 La. 471, 104 So. 211.
 

 Bills Nos. 6 and 7. The first of these bills was taken when the prosecutor was allowed to ask the brother of the victim (who visited the decedent at the hospital) if he was familiar with the condition of the latter’s back. The answer was yes. Bill No. 7 was reserved to the permitted testimony immediately following to the effect that the victim, while in the hospital, had quite a few 'bed sores on his back and buttocks.
 

 In permitting the introduction of this evidence the judge specifically informed the jury that it was for the limited purpose of identifying decedent’s body as of the time it was in the morgue — that the witness was testifying only as to what he saw as a layman, not as a medical man. Under these circumstances the testimony was relevant and, therefore, admissible.
 

 Bill No. 8. During cross examination of the decedent’s brother defense counsel asked him if it was his testimony that when he visited the victim in the hospital there was no bandage on the bullet hole. To which he answered “That’s correct. Let me explain.” Defense counsel objected to any explanation, and he reserved this bill when the court overruled the objection and permitted the witness to make it. He explained that he did not see his brother on April 1 (the night of the shooting) but that when he saw him on April 2 “he did not, to my knowledge, have a bandage on the bullet hole.” The bill is frivolous. A witness may give an expía
 
 *255
 
 nation of a “Yes” or “No” answer if he deems that the whole truth so demands and it is relevant and otherwise admissible. State v. Foster, 164 La. 813, 114 So. 696.
 

 Bill No. 9. While the decedent’s wife was testifying the prosecutor again produced the aforementioned photographs (S-l and S-2) and asked her if she could identify the person pictured. The same objection was made as when the decedent’s brother was propounded a similar identification question, and it was likewise overruled. For the reasons given above in connection with Bill No. 5 the ruling of the judge was correct.
 

 Bill No. 10. This bill was taken when the court overruled defense counsel’s objection to the questioning of the coroner in connection with his written autopsy report it being referred to as a “procésverbal”. At this time the report had not been introduced in evidence, but the coroner did identify it as having been made by him. He then testified fully as to the cause of death. Assuming for the moment that the report was not admissible in evidence, it could properly be used by the coroner to refresh his memory and only for such purpose was the report then employed. The ruling permitting his testimony was correct.
 

 Bill No. 11. As stated in defendant’s brief, “This bill was reserved on the same objection as discussed in bill No. 5 and the other bills reserved to the admissibility and/or use of the photographs admitted in evidence herein.” Therefore, no consideration of the bill is necessary.
 

 Bill No. 12. This bill also relates to the mentioned photographs S-l and S-2. The objection was directed at the questioning of the coroner concerning them because (1) they were not then in evidence and (2) they should not be admitted and shown to the jury, such being unnecessary and also extremely prejudicial in view of their gruesome character.
 

 The first reason for the objection was overcome when the photographs were introduced. The second reason is also unfounded for, as heretofore shown, they were admissible for the purpose of identifying the deceased person as the one named in the indictment. Further, as pointed out by the judge in his per curiam, they could be employed to show the location of the bullet wounds in- decedent’s back. See State v. Johnson, 198 La. 195, 3 So.2d 556; State v. Ross, 217 La. 837, 47 So.2d 559; State v. Solomon, 222 La. 269, 62 So.2d 481; and State v. Palmer, 227 La. 691, 80 So.2d 374.
 

 Bills Nos.-13 and 14. After the discussed photographs were admitted into evidence the district attorney sought to introduce the so-called “procés-verbal” of the coroner’s autopsy for the purpose of showing the cause of death of Anthony Meyers. Shortly thereafter he asked permission to exhibit the photographs to the jury. De
 
 *257
 
 fense counsel offered an objection to the introduction of the procés-verbal which was overruled and bill No. 13 was reserved. Counsel then objected to the showing of the photographs to the jury without exhibiting at the same time the procés-verbal. The court stated that it had already ruled that the photographs and the procés-verbal could be exhibited. Thereupon defense counsel reserved bill No. 14.
 

 If the procés-verbal was improperly admitted in evidence (as counsel contends) its introduction, under the circumstances existing here, resulted in no prejudice to the accused. As indicated by the judge’s per curiam it formed only a very small part of the state’s case, the purpose thereof being merely to show the cause of death. In this connection the coroner had already testified fully as to the cause of death, and his testimony was substantiated by that of numerous other witnesses and by many circumstances, including the confessions of the defendant himself.
 

 Bill No. 15. On redirect examination of the coroner the prosecutor, after referring to certain testimony which had been elicited on cross examination, asked: “Did you mean that this man would have these hemorrhages if he had not been shot?”, and he replied: “No, sir.” Defense counsel objected, and reserved this bill, to the phraseology used by the district attorney on the basis that “he has lead the witness into an inescapable answer.”
 

 Since the propounded question merely called for an explanation or a clarification of what had already been testified to on cross examination we doubt that it was objectionable. In all events it is noted that the witness had previously answered a similar question without objection.
 

 Bill No. 16. This bill was reserved when the state called Edward Baldwin (an assistant district attorney) as a witness, and the judge permitted him to testify over defendant’s objection. Counsel objected to his taking the stand because (1) no mention was made of him as a witness in the opening statement and (2) his name was not on the list of witnesses subpoenaed for the state.
 

 In his opening statement the district attorney had said that Francisco Imperatore, the defendant’s first attempted robbery victim, had returned to Italy. The witness Baldwin was called for the sole purpose of explaining the absence of Imperatore and thereby avoiding the presumption which might have arisen by the failure of the state to produce him as a witness.
 

 The district attorney in his opening statement is not required to give in minute detail all of the evidence which he intends to introduce or the name of each witness he proposes to place on the stand. State v. Winey, 216 La. 560, 44 So.2d 115 and State v. Pearson, 224 La. 393, 69 So.2d 512. Furthermore, Baldwin’s testimony
 
 *259
 
 was not evidence by which the state expected to establish the commission of the crime. Its purpose, as before shown, was merely to explain why a particular witness was not called.
 

 Unfounded also is the objection that Baldwin was not listed to be summoned as a state witness. We know of no1 law, nor have we been cited to any by defense counsel, which requires the listing of witnesses who need not be subpoenaed.
 

 Bills Nos. 17, 18 and 19. While assistant district attorney Baldwin (mentioned in bill No. 16) was on the stand he was propounded questions relative to Imperatore’s having been held for a while as a material witness in a case in which Goins and Mackey were charged with attempted murder. To Baldwin’s testimony defense counsel interposed several belated objections. These were overruled and bills Nos. 17 and 18 were reserved. The following colloquy between the judge and defense counsel then followed:
 

 “By the Court: The only purpose of this testimony of the assistant district attorney is to identify this man who was given permission to leave the United States.
 

 “I make this statement for the benefit of the jury.
 

 “Mr. McGovern: I say that other information was volunteered which was prejudicial to the rights and the case of this defendant.
 

 “Will your Honor instruct the jury to disregard anything but the fact that that particular witness has been excused to permit him to go back to Italy?
 

 “By the Court: Yes. I am telling them that. But I am not instructing them to disregard the details of where the man is, as testified by this assistant district attorney.
 

 “Mr. McGovern: I now move for a mistrial on the basis that your Honor has commented upon, and in effect repeated, the testimony of a witness, which testimony has been subject to an objection and a bill of exception reserved.
 

 “I therefore now move for a mistrial
 

 “By the Court: The statement of the court was made for the benefit of the record and in answer to counsel who makes the objection. The court has to explain his ruling for the benefit of the record. Other than that, the court has nothing to say. The motion is overruled.”
 

 Bill No. 19 resulted from the overruling of the mentioned motion for a mistrial.
 

 If the testimony referred to in bills Nos. 17 and 18 was objectionable the judge clearly eliminated its harmful effect by re
 
 *261
 
 stricting it, under his instructions to the jury, to the identifying of Imperatore as having been permitted to leave the United States. Bill No. 19 likewise is without merit. Under the circumstances the remarks of the judge did not constitute a comment on the evidence; they were merely in explanation of his ruling. Moreover, the judge made them in response to defense counsel’s request that he so instruct the jury.
 

 Bills Nos. 20, 21, 22 and 24. The first three of these bills were taken when the state was permitted to introduce in evidence and exhibit to the jury photographs (S-4 through S—9) of the scene of decedent’s shooting, defense counsel having objected on the ground that the proper predicate for the introduction had not been laid. While the photographer did not testify at this time (he did so later, as hereafter shown) the pictures were identified by Lt. Dumaine, a police officer who had gone to the scene of the crime immediately a-fter the shooting. He was familiar awith the neighborhood and stated that the pictures were of the street corner where he found the victim. Too, as the trial judge appropriately points out in substantiation of his rulings in which we find no error, the names of the intersecting streets forming the corner in question are lettered in the sidewalks and appear in several of the photographs, thus making the identification even more certain. Again, the state later produced the photographer who took the pictures and he identified them.
 

 To the latter’s testimony defense counsel objected as coming “too late”, and he reserved bill No. 24 on the overruling of the objection. The defendant cannot regulate the state in its order of proof, and the procedure resorted to here was held not to be reversible error in State v. Foss, supra.
 

 Bills Nos. 23 and 25. These bills were, reserved to the overruling of defense motions for a mistrial made when Lt. Dumaine and another officer, who were at the scene of the crime shortly after it occurred, respectively volunteered the information (the testimony was not responsive to the prosecutor’s questions) that the victim had told them that he had been shot. Previously, the judge had carefully instructed each to tell only what he saw and knew and not what he had been told.
 

 Assuming that it was improper for these witnesses to repeat the statement made to them by the victim (the state contends that it was admissible as part of the res gestae), we do not find that there was any prejudicial error committed. In each instance the court instructed the jury to disregard the volunteered information. And we have held on numerous occasions that such a voluntary statement for which the district attorney is not responsible cannot defeat a conviction, particularly when the jury is instructed to disregard the remarks. See
 
 *263
 
 State v. Labat, 226 La. 201, 75 So.2d 333 and the many cases cited therein. Furthermore, the record is replete with other testimony that the victim had been shot.
 

 Bill No. 26. In his opening statement the district attorney had said that he would show that on Friday, April 21, certain remarks were made by the defendant to Thomas Hulings while the latter was visiting in the parish prison. Later, Hulings took the stand and testified as to the occasion and the remarks. On cross examination it was brought out that the date of the mentioned visit was the Friday previous to the trial, or October 21. Defense counsel then requested "that
 
 all
 
 of the testimony of this witness must be excluded as beyond their opening statement”, and he reserved this bill to the court’s refusal of the request. (Italics ours.)
 

 Primarily, the court’s ruling was not in error since the record discloses that this witness’ testimony dealt with numerous other incidents relating to the actions of the defendant, immediately before and after the commission of the crime, which were properly covered in the opening statement. At the most defense counsel might have been entitled to the exclusion of that part of the witness’ testimony relating to the occurrence in the jail; but his request was that all of the testimony be excluded — one to which he obviously was not entitled.
 

 Furthermore, we agree with the trial judge, as stated in his per curiam to this bill, that “ * * * the date could have been April 21, or in May, June, July, August, September or October, or Friday, October 21, which was the date actually fixed by the witness, and the relevancy and the pertinency of this evidence would not have been affected. Any date subsequent to the time appellant was in the Parish Prison on this charge would suffice for the relevancy and pertinency of the incident.
 

 “ * * * it was the incident itself, all of the details of which incident were set forth in the opening statement, that was the essence and the substance of this testimony.”
 

 Bill No. 27. While the witness Lawrence Warden was testifying before the jury about an oral confession made to him by defendant in Sander’s bar on the night of the crime (after the predicate had been laid showing the free and voluntary nature of it) he was asked: “Did he tell you why he killed the man?” The witness answered: “He said he was holding him up and he ran”. At this point defense counsel objected on the ground that this particular remark was not submitted on the laying of the predicate. The objection was overruled and this bill reserved.
 

 When counsel objected the question had already been answered (he did not request instructions that the answer be disregarded) ; hence, the objection came too late. Additionally, the remark constituted only a
 
 *265
 
 small part of or incident in a single confession which had properly been shown to be free and voluntary.
 

 Bills Nos. 28, 29, 30 and 31. All of these bills were taken in the absence of the jury.
 

 To traverse the showing made by the state, for the introduction of the several confessions defense counsel called to the stand James P. Screen, the attorney for Mackey, and asked the following question: “Is it not a fact that on behalf of your client you have made a deal with the district attorney’s office that, in return for the testimony of your client against the accused at the bar, Thomas Goins, the co-defendant Benjamin Mackey would be granted a severance and would be allowed to plead ‘Guilty without capital punishment’ in a subsequent trial after the conclusion of this trial?” The state objected on the ground that the testimony sought to be elicited was not then relevant. The objection was sustained and defendant reserved bill No. 28. Before the judge at that time (the jury was absent) was only the question of the voluntariness of the confessions made by defendant. The query of defense counsel addressed itself to the matter of the credibility of the accomplice Mackey, and was then completely irrelevant (as the judge ruled).
 

 Next, defense counsel called Mackey, in a further attempt to traverse the state’s testimony, and asked if he had made any admissions to the police. The question was obj ected to by the district attorney who then said: “He has the right to protect his constitutional rights and refuse to answer on the grounds of his rights.” Thereupon, defense counsel moved for a mistrial “ * * * on the basis of the prejudicial statement by the district attorney. When the witness is trying to answer, he is putting words in his mouth.” The judge denied the motion for a mistrial, and bill No. 29 was reserved. The witness, after consulting with his attorney (Mr. Screen), refused to answer, standing “on my constitutional rights.” No prejudice resulted from the ruling, assuming that error was committed, because later defense counsel did elicit testimony from the witness to the effect that he had signed a statement implicating himself in the murder.
 

 While Mackey was still testifying out of the presence of the jury defense counsel asked what persons requested him to give testimony against Thomas Goins. The state obj ected on the ground that it was immaterial “to the issue here”, and bill No. 30 was reserved when the court refused to permit the witness to answer. Clearly the trial judge ruled correctly. The only issue before the court at that time was the free and voluntary nature of the confessions.
 

 Later, in the same period of questioning by defense counsel, the witness Mackey was asked: “Mackey, * * * it
 
 *267
 
 is my understanding that you say the written statement you made to the police was free and voluntary and was without any beating by the police, or any threats or promises by the police. Is that correct?” The court noted that the witness had already refused to answer the question, and the witness then said: “I stand on my constitutional rights.” Defense counsel then reserved bill No. 31 to the witness’ use of the privilege. Since the witness had already previously testified that he had made a written statement implicating himself in the murder and had answered a similar question in the affirmative we do not find that there was any prejudice to the defendant in the court’s failure to require a repetition of the answer.
 

 Bills Nos. 32 and 36. These bills were taken to rulings of the court that the oral and written confessions made to Lt. Trosclair and other officers and an oral confession made in Charity Hospital to the victim’s wife were admissible in evidence. We have read the testimony taken in connection with these bills, almost all of which was given by eight persons called by the state, and we do not find that there was any error in the trial judge’s conclusion in admitting the confessions. It overwhelmingly shows that the confessions were freely and voluntarily given. The lone witness testifying to the contrary was the defendant himself. Even the testimony of the accomplice Mackey, when called by the defendant, proved entirely negative as to threats, intimidation, promises, etc. Under such circumstances we would not be warranted in disturbing the rulings. See State v. Mistretta, 192 La. 489, 188 So. 150 and State v. Holmes, 205 La. 730, 18 So.2d 40.
 

 Bill No. 33. While Lt. Trosclair was being cross examined by defense counsel as to whether the accused was taken to the hospital so that the victim might identify him, the following answer was given: “No; that was not the purpose. We went there because he wanted to explain to the victim just how he held him up, and how he shot him.” Whereupon counsel moved for a mistrial because of the alleged prejudicial nature of the witness’ unsolicited statement, and he reserved this bill when the motion was overruled. There is no suggestion that the district attorney was in any way responsible for the unsolicited portion of the answer. Too, the trial judge instructed the jury to disregard the remark. Therefore, the ruling of the trial judge was proper. See State v. Labat, supra.
 

 Bill No. 34. After the state in the presence of the jury had again presented its evidence disclosing that the confessions were free and voluntary defense counsel attempted to place the accused on the stand for the limited purpose of traversing the testimony on such point. This bill was reserved to the trial court’s ruling that he could not limit the state in its cross
 
 *269
 
 examination of the defendant. The ruling was correct. The defendant previously had been afforded (and he exercised) the privilege of restricted examination for the purpose of traversing, it having properly occurred during the absence of the jury and prior to the ruling that the confessions were admissible. The admissibility of a confession is a question for the trial judge; its weight and effect, after it has been ruled admissible, is one for the jury. Accordingly, the time for determining the matter of admissibility is when the state is proving the voluntary nature of the confession, out of the presence of the jury, preparatory to offering it in evidence. See State v. Thomas, 208 La. 548, 23 So.2d 212; State v. Wilson, 217 La. 470, 46 So.2d 738; and State v. Jugger, 217 La. 687, 47 So.2d 46.
 

 Bill No. 35. In the presence of the jury and before the state had completed its case in chief the judge permitted the defendant to introduce evidence relative to matters going to the weight of the confessions. (This procedure seems somewhat irregular, although certainly not prejudicial to the accused, as is pointed out by the trial judge in his per curiam to the preceding bill.) To this end defense counsel called the accomplice Mackey as his witness, and after propounding some preliminary questions concerning the confessions queried: “Who asked you to testify against Thomas Goins?” On his own motion the judge ruled the question improper saying “I don’t think we have gotten around to that yet. * * * The court has certain powers to control the conduct of the case.” To the ruling defense counsel reserved this bill. As indicated by the remarks of the judge, and as stated in his per curiam, the question was ruled out because he considered it as being in cross examination of Mackey (then a defense witness on direct examination) who had not yet appeared as a witness for the state and, hence, it was improper at that time. When Mackey was ultimately called by the state defense counsel was permitted full and free cross examination of him. There is no merit, therefore, in the bill.
 

 Bills Nos. 37 and 38. While Lt. Trosclair was on the stand giving the substance of the oral confession which the defendant had made to him certain parts of his testimony (hence parts of the confession) were objected to, and these bills were reserved when the judge overruled the objections. The bills are without foundation. The record shows that this testimony was merely a recitation of the oral confession made by the defendant. As such it had to be given to the jury in its entirety. LRS 15:450; State v. Paternostro, 219 La. 563, 53 So.2d 673.
 

 Bill No. 39. This bill was reserved to the overruling of defendant’s objection to the written confession for the
 
 *271
 
 reasons that (1)’ it was not voluntary and (2) it was not verbatim, but “in substance” the confession of the defendant. We have already discussed the question of whether the confession was voluntary and have held that it was. The cases of State v. Brasseaux, 163 La. 686, 112 So. 650 and State v. Comery, 214 La. 245, 36 So.2d 781, fully support the ruling that the written confession signed by the defendant need not be verbatim.
 

 Bill No. 40. This bill was taken when the judge refused to instruct the jury that the two shootings (of Imperatore and of Meyers) referred to in the written confession were not separate incidents but were a “rehash” of the same incident. The bill cannot possibly be seriously relied on. The confession was properly proved and introduced; an interpretation of its contents was for the jury. For the court to have attempted an explanation thereof would have amounted to a comment on the evidence.
 

 Bills Nos. 41, 42 and 43. These bills were reserved when the judge, over defense counsel’s objection, permitted the plaid jacket and white T-shirt worn by the decedent at the time of the shooting to be introduced in evidence and exhibited to the jury. The objection was that they had not been sufficiently identified, “only by a party definitely in interest, the wife of the deceased.” The state showed that the wife was qualified to make the identification and this was not rebutted by defendant. Her interest affected only the weight, not the admissibility, of the evidence.
 

 Bill No. 44. This bill was taken to the introduction into evidence of decedent’s fishing license, hunting license and driver’s license, the objection being that they had not been properly identified. The bill is unfounded. The widow testified that these items were always kept by decedent in the wallet which defendant admittedly removed from his pocket. They were further identified by the signature, name and address of decedent borne by each.
 

 Bill No. 45. When Motorcycle Patrolman Henry Cerise was permitted to testify as to his having been shot at shortly after the commission of the crime charged, while he was attempting to stop the fleeing car containing the defendant and Mackey, defense counsel objected and reserved this bill. The objection was that the shooting constituted a separate crime and as such was inadmissible in evidence. The testimony was admissible as disclosing conduct indicating a consciousness of guilt. See State v. High, supra. Besides, the same incident was related by defendant in his confessions to the police, and the accomplice Mackey testified to it without objection from defense counsel.
 

 Bill Nos. 46 and 47. The first of these bills was reserved when the court permitted Mackey to testify as a state wit
 
 *273
 
 ness, defense counsel having objected to any testimony by him “on the ground he is a co-defendant and is being tried on the same indictment and request (ed) of the state a severance so that he might present it to a separate jury.” Bill No. 47 was taken to the refusal of the court to limit Mackey’s testimony to the verification of the defendant’s confession. There is no merit in these bills. It is well settled that the testimony of an accomplice is admissible, although it should be viewed with extreme caution. The fact that the witness is an accomplice affects only the matter of credibility, with respect to which the jury is to pass judgment. State v. Pace, 183 La. 838, 165 So. 6; State v. Gunter, 208 La. 694, 23 So.2d 305; and State v. Matassa, 222 La. 363, 62 So.2d 609.
 

 Bill. No. 48. This bill was reserved to the ruling of the court in refusing at the close of the state’s case to order a directed verdict of not guilty. We are unaware of any law of this state, and have been cited to none, authorizing directed verdicts in capital cases.
 

 Bill No. 49. In his closing argument to the jury the district attorney referred to the defendant’s written confession as a “duplicate original of the confession.” Defense counsel objected to the reference, stating that the jury must determine for themselves what they thought it was. There was no ruling and no bill reserved. Lienee, there is nothing here for this court to consider.
 

 Bill No. 50. This bill was reserved to the overruling of a motion for a mistrial because of misstatements of law allegedly made to the jury by the district attorney in his closing argument. The closing arguments of counsel, we are informed by the judge’s per curiam, are not recorded by the court reporter until an objection is made to some specific part thereof. When that occurs he records the complete incident objected to. No such recorded incident is disclosed by the transcript and, hence, we must accept the statements of the trial judge (as set out in his per curiam) as to what actually happened here.
 

 The judge points out first that no objection to alleged misstatements was urged until after the district attorney had concluded his argument. He further informs us that he listened carefully and closely to the prosecutor’s argument; and, in clear and forceful language, he says that defense counsel’s allegations attributing misstatements to the district attorney are “completely erroneous and utterly without any foundation in fact.” We find no merit, therefore, in the bill.
 

 Bill No. 51. This bill was reserved to the overruling of a motion for a new trial. In the motion defense counsel set forth the asserted errors covered by the previous
 
 *275
 
 fifty bills, and he also alleged the existence of certain newly discovered evidence. We have read the evidence taken on the motion and have concluded that there is nothing which would warrant our reversing the ruling of the trial judge.
 

 Bill No. 52. Defense counsel reserved this bill when the judge overruled his motion in arrest of judgment. In his brief to this court he points to no error in the ruling; he merely refers us to the bill itself. We have consider the motion, the bill taken to its overruling, and the trial judge’s per curiam furnished in connection therewith. We find no error in the ruling.
 

 For the reasons assigned the conviction and sentence are affirmed.