Woodman J. COLLINS, Appellant,

v.

Victor G. WALKER, Warden, Louisiana State Penitentiary, Angola, Louisiana, Appellee.

No. 20537.

United States Court of Appeals
Fifth Circuit.

March 11, 1964.

Herschel N. Knight, Stephen P. Coco, Jennings, La., for appellant.

Teddy W. Airhart, Jr., Asst. Atty. Gen., Baton Rouge, La., Jack P. F. Gremillion, Atty. Gen., for the State of La., Bernard N. Marcantel, Dist. Atty., Parish of Jefferson Davis, for appellee.

Before RIVES and JONES, Circuit Judges, and DAWKINS, Jr., District Judge.

RIVES, Circuit Judge:

The opinions on original hearing are withdrawn, and the following opinion substituted:

Collins, a Negro, was convicted and sentenced to death under an indictment charging him with aggravated rape upon a white woman. The conviction and death sentence were affirmed by the Supreme Court of Louisiana. State v. Collins, 1962, 242 La. 704, 138 So.2d 546, 547. Certiorari to the Supreme Court of the United States was denied, 371 U.S. 843, 83 S.Ct. 74, 9 L.Ed.2d 79.

His petition for habeas corpus to the United States District Court claimed that his conviction was violative of the Constitution of the United States in three respects: (1) He was discriminated against because of his race or color in the organization of the grand jury which indicted him; (2) he was mentally unable to stand trial, an imbecile not able to assist counsel in his defense; (3) his conviction was procured in part by an unconstitutionally coerced confession.

■ Each of these contentions had been raised and decided against him upon his trial and upon appeal to the State Supreme Court. It is therefore properly conceded that he has satisfied the requirement of 28 U.S.C.A. § 2254, that state remedies be exhausted before a federal court may grant an application for habeas corpus. 28 U.S.C.A. § 2254; Brown v. Allen, 1953, 344 U.S. 443, 447–450, 73 S.Ct. 397, 97 L.Ed. 469; Fay v. Noia, 1963, 372 U.S. 391, 426, 83 S.Ct. 822, 9 L.Ed.2d 837, et seq.

At the request of the district court, a copy of the record and transcript of proceedings in the State courts was presented and filed with the district court. Upon the basis of that record and transcript, and without taking additional evidence, the district court denied the application for habeas corpus. Collins v. Walker, E.D.La.1963, 215 F.Supp. 805. Thereafter, the district judge issued a certificate of probable cause in accordance with 28 U.S.C.A. § 2253, and permitted the prosecution of this appeal in forma pauperis.

■ It is settled that a federal district court may, in its discretion, refuse the writ of habeas corpus without hearing additional evidence, if the court is satisfied, by an examination of the record and proceedings in the State court, that the issues have been adequately litigated, that the state process has given fair consideration to the issues and the evidence, and has resulted in a legally satisfactory conclusion, and that no unusual circumstances calling for a hearing are presented. Brown v. Allen, supra, 344 U.S. at 463, 73 S.Ct. at 410–411, 97 L.Ed. 469. The Supreme Court has, however, recently emphasized that, "Even if the state court adjudication turns wholly on primary, historical facts, the Federal District Court has a broad *power* on habeas to hold an evidentiary hearing and determine the facts." Fay v. Noia, supra, 372 U.S. at 422, 83 S.Ct. at 840, 9 L.Ed.2d 837. The Supreme Court in Townsend v. Sain, 1963, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770, set forth the tests with more particularity:

"We hold that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were

not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing."

On the first question, that of racially discriminatory organization of the grand jury, we reach a conclusion upon the state court record and transcript opposite to that reached by the state courts and by the district court.

(1) Indictment is the only method provided by the law of Louisiana for the institution of the prosecution of a capital offense. LSA–Rev.St. Title 15, § 2. A jury commission for each parish is selected and appointed by the district judge. LSA–Rev.St. 15:175. At the time ordered by the district judge, the jury commission meets at the office of the clerk of the district court and selects from the persons qualified to serve as jurors for their parish three hundred persons as the "general venire list." LSA–Rev.St. 179. The next section provides the method of selecting a grand jury.

"§ 180. *Selection of grand jury*

"Immediately after completing the general venire list, the commission shall select *therefrom* the names of twenty citizens, possessing the qualifications of grand jurors, to be taken from different portions of the parish, as far as practicable, who shall be subject to .duty as grand jurors during the term of six months after the grand jury is impaneled and until a succeeding grand jury shall have been impaneled.

"The names of the persons so selected shall be written on slips of paper, by the clerk, in the presence of the commissioners and they shall place the slips in an envelope, seal the same and indorse thereon the words: 'List of Grand Jurors.'" (Emphasis supplied.)

Negroes constitute a substantial proportion of the population of Jefferson Davis Parish. Mr. Arceneaux, the member of the Jury Commission from Ward 2, testified that the population in that ward was about 75% white and 25% Negro, that being the "heaviest concentration of colored people in Jefferson Davis Parish."

Mr. Arceneaux had served on the Jury Commission since 1958. In that year the Jury Commission prepared the original "general venire list" of 300 persons.

"Q. Would you tell the court what sort of instructions you were given and who gave them to you?

"A. When we were appointed on the Committee we were given instructions as to who was eligible and ineligible for jury duty by written instructions from the Judge. We have been from time to time reminded by the Judge that in picking the jury to just be careful that there should be both white and colored members on the jury. Other than this I would say we've had no instructions."

Some Negroes were included in this original list of 300 but Mr. Arceneaux did not recall how many. "We have met twice annually for the choosing of additional names to add to the 1st (sic) to replace the juries that have been drawn out of that original list."

Mr. Arceneaux further testified:

"Q. Now, have there been three grand and petit juries drawn from this list since it was prepared?

"A. From that list, no.

"Q. How many have been drawn or do you know?

"A. I think there would have been five grand juries drawn since we've been on. It's either four or five.

"Q. Now, Mr. Arceneaux—

"A. They are not taken from that list of three hundred.

"Q. Sir?

"A. That grand jury was not picked out of that original group of three hundred.

"Q. It was not?

"A. No.

"Q. How was that—

"A. The grand jury is picked by names in the additions to the three hundred.

"Q. In additions to the three hundred?

"A. Correct."

Again Mr. Arceneaux testified:

"Q. Do you have any idea how many colored people are presently in the venire list of three hundred?

"A. That would be a hard question to answer. I don't know I could even give an estimate because we have drawn a lot of the original names and it would be hard—well, it would be impossible for any individual member of the Commission to say, because the names when they are submitted are not submitted as colored or white, they're submitted as names and we know in our selection what they are but when they are put in the box there is no way in distinguishing between them.

"Q. But when you do draw the grand jury out you do know whether they are colored or white?

"A. The grand jury is named before the names are put in the box, yes, we do know whether they are colored or white.

"Q. Now, as I understand it, when you prepare the grand jury you don't look in the box of three hundred and select out twenty names? You simply get together and you all select twenty names, period, and put them on there. Is that right?

"A. That's correct."

As each grand jury was selected, the Jury Commission was instructed by Mr. Charles A. Pitre, the Clerk of the District Court, that some Negroes should be included. As Mr. Arceneaux testified:

"A. That instruction, each time that we had met, has come from Mr. Pitre that there should be some colored representation on each grand jury.

"Q. I see.

"A. But not any specific instructions other than that we should attempt to do that each time."

At the time of Collins' arrest on April 8, 1960, there had been recently empaneled for Jefferson Davis Parish a regular grand jury for the six months commencing March 21, 1960. There was no Negro on that grand jury for the reason thus stated by Mr. Arceneaux:

"Q. Now do you know what reason why you did not put any on the grand jury immediately prior to the grand jury under which this man was indicted?

"A. I had put some on the previous and I was depending on some one else to put someone on the previous grand jury and in the course of events when we finished putting the names in it turned out that all of us had depended on someone else putting the names in and it so happened none of us did."

Mr. Arceneaux further testified:

"Q. Now, Mr. Arceneaux, how many Negroes did you put on the grand jury panel or the twenty names prior to this particular one and prior to the one that you failed to put anyone on? About how many had you—

"A. I think that I had always put at least one on the grand jury panel on all of the grand juries that have been selected except the one immediately preceeding (sic) the present grand jury."

Collins' case was not presented to the grand jury empaneled when he was ar-

rested, but instead he was held in jail for six months until October 5, 1960, at which time six Negroes were purposely placed on the list of twenty names,[1] from which the judge selected the foreman, and the sheriff drew by lot the names of the other eleven jurors,[2] with the result that the grand jury was composed of five Negroes and seven whites.

It was this grand jury which indicted Collins for aggravated rape and also for aggravated kidnapping and attempted murder. No other case was presented to this grand jury.

Appellee denies that the list of twenty was not selected from the general venire list of 300 persons, but was selected from persons not theretofore on the general venire list. Appellee concedes that Mr. Arceneaux so testified, but attaches as an exhibit to his brief on petition for rehearing a copy of a document not otherwise in this record, known as the *proces verbal* of the proceedings of the jury commission, to show that Mr. Arceneaux was in error. That *proces verbal* contains statements that the twenty names were removed from the general venire box.

█ Of course, in considering whether the Constitution has been violated, no

conclusive presumption of truth is to be accorded the recitals of the *proces verbal* or of any other record, but the true facts may be developed. See Massey v. Moore, 1954, 348 U.S. 105, 75 S.Ct. 145, 99 L.Ed. 135, reversing Massey v. Moore, 5 Cir. 1953, 205 F.2d 655, note especially pages 671, et seq. The testimony of Mr. Arceneaux heretofore quoted is not disputed by any evidence introduced in this case, but is consistent with, if not supported by, the testimony of several other jury commissioners.[3]

If the *proces verbal* tended strongly to prove that Mr. Arceneaux was mistaken in his testimony on this point, and if such mistake would affect our decision, then perhaps this case should be remanded to the district court for a further hearing. However, even if the list of twenty had been selected from the general venire list, it would nonetheless remain true that six Negroes were purposely included in that list of twenty because of the fact that they were Negroes; that the identities of the six Negroes so included were known to the jury commissioners; that they knew also that the grand jury to be chosen from that list of twenty was to consider whether to return an indictment against Col-

1. Mr. Strohe, the member of the Jury Commission from Wards 6 and 7, testified that there were very few Negroes in Ward 7, but about 30% of the population of Ward 6 was colored. He further testified:

"Q. * * * Now, do you recall how many Negroes were put on the grand jury venire of twenty names which is the present grand jury?

"A. Actually of the five of us we have our Wards designated and we feel responsible for those particular Wards, and to say exactly how many was put on I wouldn't know but I can speak for myself for 6 and 7.

"Q. Well how many were put on from 6 and 7?

"A. I think one from 6 and none from 7. * * * *"

Mr. Johnnie Robert Benoit, the Jury Commission member representing Wards 5, 8 and 9, testified that on the list of 20 names from which the court drew the grand jury which indicted Collins.

"Q. And how many did you put on?

"A. I put two white man (sic) and one negro which I figured was fair to this man."

2. LSA–Revised Statutes Title 15, Sec. 184, provides in part that:

"The judge shall select from the list of grand jurors a suitable person to act as foreman of the grand jury, and the sheriff, under the direction of the court, shall draw by lot from the envelope indorsed 'list of grand jurors,' the names therein until eleven answer, who, with said foreman, shall constitute the grand jury."

The "list of grand jurors" referred to is the list of twenty names selected as provided in LSA–Rev.St. 15:180, heretofore quoted.

3. See testimony of T. R. Strohe, R. pp. 133, 134, 135; Wendell Aguillard, R. p. 143; Bert Landry, R. pp. 147, 148; and Johnnie Robert Benoit, R. pp. 152, 153, 154.

lins, and that no other case was scheduled to be considered by that grand jury.

■ A Negro is entitled to the equal protection of the laws, no less and no more. He stands equal before the law, and is viewed by the law as a person, not as a Negro. In the historic language of the elder Mr. Justice Harlan:

"There is no caste here. Our Constitution is color-blind, and neither knows nor tolerates classes among citizens. In respect of civil rights, all citizens are equal before the law. The humblest is the peer of the most powerful. The law regards man as man, and takes no account of his surroundings or of his color when his civil rights as guaranteed by the supreme law of the land are involved."

Plessy v. Ferguson, 1896, 163 U.S. 537, 559, 16 S.Ct. 1138, 1146, 41 L.Ed. 256.

■■ An accused cannot demand a mixed grand jury, some of which shall be of his same race. What an accused is entitled to demand under the Constitution is that in organizing the grand jury there shall be no discrimination against him because of his race or color. Martin v. Texas, 1906, 200 U.S. 316, 321, 26 S.Ct. 338, 50 L.Ed. 497.

The Supreme Court has frowned on the use of white tickets to indicate prospective white jurors and yellow tickets to indicate Negroes.

"Petitioner's charge of discrimination in the jury selection in this case springs from the Jury Commissioners' use of white and yellow tickets. Obviously that practice makes it easier for those to discriminate who are of a mind to discriminate."

Avery v. Georgia, 1953, 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244.

The positive, affirmative duty resting upon jury commissioners and other public officials is expressed in Avery v. Georgia, supra, 345 U.S. 559, 561, 73 S.Ct. 891, 892, 97 L.Ed. 1244 as follows:

"The Jury Commissioners, and the other officials responsible for the se-

lection of this panel, were under a constitutional duty to follow a procedure—'a course of conduct'—which would not 'operate to discriminate in the selection of jurors on racial grounds.' Hill v. State of Texas, 1942, 316 U.S. 400 [62 S.Ct. 1159, 86 L.Ed. 1559]."

Also quoted in United States ex rel. Seals v. Wiman, supra, 304 F.2d at 66.

■ The only list of importance to the decision of this case is the list of twenty from which the foreman was selected and the other eleven grand jurors drawn. Six Negroes were deliberately included in this list of twenty because of their race. When to this circumstance is added the additional facts then known to the jury commissioners that the grand jury to be chosen from that list of twenty was to consider whether to return an indictment against Collins, and that no other case was scheduled to be considered by that grand jury, the conclusion becomes inescapable that in the organization of the grand jury which indicted Collins there was discrimination against him because of his race or color.

Since the judgment of the district court must be reversed and the cause remanded to await a possible reindictment and retrial of Collins, it is not necessary to decide the other two questions presented by this appeal.

Notwithstanding our holding that the indictment against Collins is unconstitutional and void, Collins is now legally detained upon his commitment to await the action of another grand jury. Collins is, of course, entitled to be tried within a reasonable time, and the district court should retain jurisdiction to meet the unlikely event that further orders and judgments may be necessary or proper.

Any such reindictment must of course be by a grand jury in the organization of which there has been no discrimination against Collins because of his race or color. For the guidance of the parties, the Court expresses the present opinion that if Collins is reindicted and

retried and if any question should arise as to the legality or constitutionality of such indictment or trial, that should be decided not upon the present petition but in the regular course by the Courts of the State of Louisiana, subject to possible review by the Supreme Court of the United States or upon other habeas corpus proceedings.

The judgment of the district court is reversed, judgment here rendered in accordance with the holdings of this opinion, and the cause remanded for any further proceedings which may be found necessary or proper.

With this opinion thus substituted, the appellee's petition for rehearing is denied.

Reversed, rendered, and remanded.