

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00008-CR

———————————————

DREMEL LAMONT ROBERTS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 415th District Court
Parker County, Texas
Trial Court No. CR22-0766

---

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

Appellant Dremel Lamont Roberts pleaded guilty to the felony offense of property theft with two or more prior convictions, *see* Tex. Penal Code Ann. § 31.03(e)(4)(D), and elected to have a jury assess his punishment. The jury assessed Roberts's punishment at 17 years' confinement, and the trial court sentenced him accordingly. On appeal, Roberts, who is African American, argues in a single issue that the trial court violated his constitutional rights by allowing his punishment trial to proceed with a jury venire that lacked any African American representation and thus deprived him of a jury representing a fair cross section of the community. *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10. We affirm.

## BACKGROUND

Roberts was indicted for theft of property valued at less than $2,500 with two prior theft convictions, a state jail felony offense. *See* Tex. Penal Code Ann. § 31.03(e)(4)(D). The indictment contained three enhancement paragraphs alleging that Roberts was a habitual felon. If proven to be true, these enhancement allegations would elevate the punishment range for Roberts's charged offense to that of a second-degree felony. *See id.* § 12.425(b).

At trial, Roberts pleaded guilty, pleaded true to the enhancement paragraphs, and elected to have a jury assess his punishment. Roberts further stipulated that he had previously been convicted of 34 offenses, including the offenses alleged in the

2

indictment's enhancement paragraphs. Seventeen of these prior convictions are for theft.

After accepting Roberts's guilty plea, the trial court commenced jury selection for the punishment trial. Before voir dire began, Roberts objected to the racial composition of the 50-person jury panel as constitutionally infirm because it did not represent a fair cross-section of the community. As Roberts's counsel pointed out, "the individuals appearing are all white, maybe three Hispanic, people that don't match up with the demographics of this county." The State offered neither objection nor commentary regarding Roberts's description of the jury's racial composition. The trial court overruled Roberts's objection and proceeded with voir dire.

During voir dire, Roberts's counsel pointed out to the veniremembers that "[Roberts] is a different ethnicity[;] he's a black man" and asked them whether Roberts's ethnicity would "be an issue" for them when assessing Roberts's punishment. Again, the State did not dispute or offer any commentary about Roberts's counsel's characterization of Roberts's and the veniremembers' ethnicities.

During trial, copies of Roberts's stipulation to his prior convictions and of the prior judgments of conviction were admitted into evidence without objection. The State then presented evidence showing that Roberts had stolen three Milwaukee-brand tools from a Home Depot in Weatherford, Texas, valued at $567 before taxes.[1]

---

[1]The evidence showed that the tools were recovered by the police and returned undamaged to Home Depot.

After the jury assessed Roberts's punishment at 17 years in prison and he was sentenced accordingly, this appeal followed.

## DISCUSSION

In a single issue, Roberts argues that the trial court violated Roberts's constitutional rights by allowing his punishment trial to proceed with a jury venire that did not include a single African American member and therefore lacked a fair cross section of the community. *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10. We disagree.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant an impartial jury selected from sources reflecting a fair cross-section of the community, *Taylor v. Louisiana*, 419 U.S. 522, 526, 530–37, 95 S. Ct. 692, 697–701 (1975); *see* U.S. Const. amend. VI, and the Texas Constitution affords a criminal defendant this same right, *Marquez v. State*, 725 S.W.2d 217, 243 (Tex. Crim. App. 1987); *see Jacobs v. State*, 560 S.W.3d 205, 210 (Tex. Crim. App. 2018); *see also* Tex. Const. art. I, § 10. Although jury venires must represent a fair cross-section of the community, there is no requirement that a jury panel chosen for a particular case "mirror the community and reflect the various distinctive groups in the population." *Gray v. State*, 233 S.W.3d 295, 300 (Tex. Crim. App. 2007) (quoting *Taylor*, 419 U.S. at 538, 95 S. Ct. at 702).

To establish a prima facie violation of the fair-cross-section requirement, a defendant must show that: (1) the group alleged to be excluded is a "distinctive"

4

group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to the systematic exclusion of the group in the jury selection process. *Berghuis v. Smith*, 559 U.S. 314, 327, 130 S. Ct. 1382, 1392 (2010); *Duren v. Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664, 668 (1979). With regard to the third prong, Roberts has not shown that the underrepresentation of African Americans, if it occurred at all, was due to their systematic exclusion in the jury process. *See Berghuis*, 559 U.S. at 327, 130 S. Ct. at 1392. Because he did not satisfy this third prong, Roberts has not made a prima facie case that he was denied fair representation in the jury venire.

To support his argument that the trial court violated the fair-cross-section requirement, Roberts relies on two primary pieces of evidence: (1) his trial counsel's statements on the record that the members of the jury venire were "all white, maybe three Hispanic, people that don't match up with the demographics of this county" and that Roberts was "a different ethnicity" than the members of the jury venire and (2) census data—of which Roberts asks us to take judicial notice—showing that Parker County has a population of 148,222, including a total of 2,929 people who identify as African American or as both African American and another race. Even if we were to assume that Roberts's trial counsel's statements are evidentiary[2] and that

---

[2]*See State v. Guerrero*, 400 S.W.3d 576, 585 (Tex. Crim. App. 2013) (acknowledging rule that counsel's statements on the record can be considered

we can take judicial notice of the census data presented in Roberts's brief,[3] Roberts has nevertheless failed to show that African Americans were systematically excluded in the jury selection process. He has presented no evidence regarding the composition of any other jury venires in Parker County, much less how such jury venires were selected. *See Pondexter v. State*, 942 S.W.2d 577, 581 (Tex. Crim. App. 1996) ("[D]isproportionate representation in a single panel does not demonstrate the systematic exclusion of distinctive groups in violation of the appellant's rights under the Sixth Amendment." (quoting *May v. State*, 738 S.W.2d 261, 269 (Tex. Crim. App. 1987))); *see also Duren*, 439 U.S. at 366, 99 S. Ct. at 669 (holding that to establish a prima facie case, "it was necessary" for the defendant to show underrepresentation

---

evidence provided that no objection was made and counsel was speaking from first-hand knowledge).

[3]*See Emerson v. State*, 880 S.W.2d 759, 765 (Tex. Crim. App. 1994) ("Judicial notice, both of adjudicative and legislative facts, may be taken on appeal."); *see also Wise Cnty. v. Mastropiero*, No. 02-18-00378-CV, 2019 WL 3755766, at *6 n.4 (Tex. App.—Fort Worth Aug. 8, 2019, no pet.) (mem. op.) (recognizing that "courts have taken judicial notice of census data concerning population under [R]ule of [E]vidence 201" to determine "whether a theory of implied dedication is viable" and proceeding to take judicial notice of Wise County census data); *City of Mesquite v. Moore*, 800 S.W.2d 617, 619 (Tex. App.—Dallas 1990, no writ) (holding that an appellate court may take judicial notice of census data "for the first time on appeal"); *but see Hood v. Wal-Mart Stores, Inc.*, No. 05-05-01049-CV, 2008 WL 256763, at *2 n.1 (Tex. App.—Dallas Jan. 31, 2008, pet. denied) (mem. op.) (admonishing that "[a]s a general rule, appellate courts take judicial notice only to determine jurisdiction over an appeal or to resolve matters ancillary to decisions which are mandated by law . . . ." because "[t]o go further runs the risk of effectively rendering [the court of appeals] into one of original, not appellate, jurisdiction" (internal quotations omitted)).

"generally and on his venire" and that the defendant satisfied this burden by showing the composition of venires over the course of nearly a year).

Roberts argues that we should presume that he has made a prima facie showing of systematic exclusion because there was "no representation"—as opposed to merely "disproportionate representation"—of African Americans on the jury venire. However, neither of the cases Roberts cites for this proposition actually supports it; rather, if anything, these cases undermine his argument that a particular group's underrepresentation—regardless of the severity—on a single jury venire warrants a presumption of systematic exclusion. *See Berghuis*, 559 U.S. at 328; *Goins v. Allgood*, 391 F.2d 692, 697 (5th Cir. 1968). While *Goins* acknowledged that "very decided variations" in the racial compositions of jury venires compared to the overall population of the community may be evidence of systemic exclusion if these variations are "not explained and are long continued," this case does not support Roberts's argument that extreme underrepresentation on *a single panel* entitles him to a presumption of systemic exclusion. *Goins*, 391 F.2d at 697.

Similarly, in *Berghuis*, the Supreme Court, citing the defendant's evidence in *Duren* as an example of what is needed to show systematic exclusion, noted that Duren had "demonstrated systematic exclusion with particularity" by showing that "women's underrepresentation was persistent—occurring in every weekly venire for almost a year" and identifying two stages of the jury-selection process in which the systematic exclusion occurred. *Berghuis*, 559 U.S. at 328, 130 S. Ct. at 1392–93. Thus,

7

*Berghuis*—like *Goins*—makes clear that a variation—even a "very decided" variation—in the racial composition of a single jury venire compared to the overall community population in and of itself is insufficient to show systematic exclusion. *See id.*; *Goins*, 391 F.2d at 697.

Further, even if we were to accept as valid the distinction Roberts attempts to draw between cases in which there is "no representation" as opposed to merely "disproportionate representation" of a distinctive group on a venire panel, Roberts's own census data undercuts the significance of such a distinction in this case. According to Roberts, out of Parker County's total population of 148,222, there are 2,929 individuals who identify as either African American or African American and another race. Based on these statistics, African Americans make up slightly less than two percent of Parker County's population.[4] The record shows that the jury venire in Roberts's case consisted of fifty people, meaning that the presence of a single African American on the venire panel would have been sufficient to prevent African Americans from being underrepresented. Thus, for African Americans to have been underrepresented in the jury venire, there would have had to be zero African Americans on the panel. In other words, in the present case, "disproportionate representation" equates to "no representation."

---

[4]By our calculations, the exact percentage is 1.976%.

8

Because we reject Roberts's argument that he is entitled to a presumption that African Americans were systematically excluded in the jury selection process and because he has failed to present any evidence of systematic exclusion, we overrule his sole issue.

## CONCLUSION

Having overruled Roberts's sole issue, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 29, 2023